# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF TROY, IDAHO,<br><br>Defendant. | Case No. 3:25-cv-00262-REP<br><br>**DEFENDANT CITY OF TROY, IDAHO'S ANSWER TO PLAINTIFF'S COMPLAINT, TOGETHER WITH AFFIRMATIVE DEFENSES, DEMAND FOR JURY TRIAL AND PROOF OF SERVICE** |

COMES NOW the Defendant, CITY OF TROY, IDAHO, by and through its attorneys, Law Offices of Todd S. Richardson, PLLC, and FOLEY, BARON, METZGER & JUIP, PLLC, saving and reserving unto its all right and manner of benefit and exception to the many insufficiencies and inaccuracies in Plaintiff's Complaint, and for its Answer thereto, or to so much as it is advised it is necessary or material for her to Answer, says:

## INTRODUCTION

1. Defendant admits only that Plaintiff purports to bring this action under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Defendant denies that it violated RLUIPA and denies all remaining allegations.

2. Defendant denies the allegations of Paragraph 2. Defendant specifically denies that its zoning enforcement, conditional use permit ("CUP") process, or decision regarding Christ Church violated RLUIPA or discriminated against any religious institution. By way of further answer, the City of Troy affirmatively states that it defends and protects the rights of all its citizens,

including religious institutions.  Troy, a city of approximately 1000 people, is home to five (5) or more religious denominations, and welcomes them all to be a vibrant part of their family-oriented community.  At the same time, the City has a right and a duty to protect its two-block long, turn-of-the-century walking business district.

## JURISDICTION AND VENUE

3. Defendant admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345, and 42 U.S.C. § 2000cc-2(f).

4. Defendant admits that venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

5. Defendant admits the allegations in Paragraph 5.

6. Defendant admits that it is a municipality located in Latah County, Idaho, and that it is governed by a Mayor and City Council.  By way of further answer, the City of Troy, Idaho, (originally named Huffs Gulch) was founded in 1885, and for the past 140 years has welcomed people to the mountains of northern Idaho.  The City is a family-oriented locale providing many activities for families and children.  The City is a welcoming community mixing long-time and recent residents coming from a wide swath of socio-economic, political, and religious backgrounds.

7. Defendant admits that the City Council serves as the planning and zoning commission and makes zoning decisions, including conditional use permits.

8. Defendant admits that it is a "government" within the meaning of RLUIPA.

## FACTUAL ALLEGATIONS – RESPONSES

**Christ Church**

9. Defendant admits that Christ Church is located in Moscow, Idaho.  Defendant lacks sufficient information to admit or deny the remaining allegations and therefore denies them.

10. Defendant admits that Christ Church constitutes a "religious assembly or institution" as defined in 42 U.S.C. § 2000cc(a).

11. Defendant admits only that Christ Church has congregants and holds services at various locations in Moscow, Idaho. Defendant denies the remaining allegations, including that Christ Church's congregation is too large for any one location or that congregants require services in Troy.

12. Defendant admits that beginning in September 2022 Christ Church rented a local bar in Troy for two Sunday services. Defendant denies all remaining allegations, including the number of Troy congregants and the characterization that the services occurred "without incident."

13. Defendant admits that the City issued a cease-and-desist because church services were being held without the required CUP.

14. Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 14 and therefore denies them.  By way of further answer, the City of Troy states that members of Christ Church own the old Troy High School, which has been marketed as available for rent and use, and, in fact, Christ Church or its sub-organizations or members, have rented it and held activities there.  The old High School sits on a parcel of land approximately 800 feet from the location in dispute herein, it sits outside the two-block long, turn-of-the-century walking commercial district, and has both sufficient space and parking to accommodate the services held by Christ Church.

15. Defendant admits that in November 2022 Matt Meyer purchased property at 424 S. Main Street in Troy's downtown district. Defendant denies the remaining allegations.

16. Defendant admits that parking is available in parts of downtown Troy. Defendant denies that this parking is sufficient to meet all proposed uses. By way of further answer, the City of Troy states that, consistent with the Comprehensive Plan, and zoning requirements, there is no "off-street" parking in the area of 424 S. Main; all parking is streetside parking, primarily on U.S. Highway 8, and then into the adjoining residential district.

17. Defendant Admits that the bank that had previously occupied the building moved out approximately a year prior to Mr. Meyer changing the location to an "events center."

18. Defendant admits that Meyer proposed office and event uses for the Subject Property. Defendant denies the remaining allegations. By way of further answer, Mr. Meyer represented that the "events center" would be used as a "Health club or dance classes; business/professional office space and a meeting place for a church."

19. Defendant admits that Christ Church entered into a lease with Meyer for use of the Subject Property. Defendant denies the remaining characterizations of the lease terms to the extent they misstate the agreement, which speaks for itself. By way of further answer, the City denies that it knew of, or was informed of any such lease.

20. Defendant denies the legal conclusion that Meyer and Christ Church hold a "property interest" within the meaning of RLUIPA.

21. Defendant denies that Meyer's or Christ Church's proposed use of the Subject Property constitutes "religious exercise" under RLUIPA.

**Troy's City Code and Comprehensive Plan**

22. Defendant admits the Subject Property is located in Troy's C-1 zoning district.

23. Defendant admits that Troy's zoning code establishes districts as described.

24. Defendant admits that the zoning code distinguishes between permitted and conditional uses, but denies any mischaracterization of the code, which speaks for itself.

25. Defendant admits that at the relevant time "church or religious facility" was listed as a conditional use in all zoning districts. Defendant expressly denies the insinuation that this designation violated RLUIPA.

26. Defendant admits the allegations in Paragraph 26.

27. Defendant admits that the zoning code sets forth CUP criteria, which are legal and appropriate within zoning laws and have been consistently upheld as constitutional bases, including compatibility and community impact. Defendant denies that such criteria are "subjective" in the manner alleged.

28. Defendant admits the allegations in Paragraph 28.

29. Defendant admits that permitted uses are allowed as of right.

30. Defendant admits the code speaks for itself.

31. Defendant admits that, prior to April 2025, the zoning code permitted certain non-religious assembly uses in C-1 as permitted uses. Defendant denies that such uses are comparable to churches for RLUIPA purposes.

32. Defendant admits that certain non-religious assembly uses were permitted as of right in other zoning districts. Defendant denies any implication of unequal treatment.

33. Defendant admits that the use chart is derived from the City Code. The Code speaks for itself.

34. Defendant admits that the Lions Club, Troy Historical Society, and Troy Community Library are located in the C-1 district, and denies that they are comparable to a church

35. Defendant admits that Troy's website identifies four churches in Troy and denies that Troy Lutheran Church is located in the C-1 district as it lies outside the northern edge of the C-1 district.

36. Defendant admits that in April 2025 the City enacted Ordinance No. 2025-02. The Ordinance speaks for itself. Defendant denies that the enactment was in response to the United States' investigation. By way of further answer, the City states that it had been working on a comprehensive zoning revisions for over two years at the time of the CUP application. The City paused working on those revisions during the CUP process and subsequent investigation by the Department. Without admitting liability and in and effort to afford itself of the safe harbor provision of RLUIPA (42 USC 2000cc-3(e)), the City, through its counsel, had multiple pre-litigation

conferences with the Department in an effort to avoid this litigation and to learn what issues, concerns, or complaints the Department had or may have with the City's zoning ordinance, so that information could be considered in the zoning ordinance revision process; the Department refused to provide any information, suggestions, or guidance. Being let in this untenable position by the Department and unable to meaningfully assert its rights under RLUIPA's safe harbor provision, the City returned to the ordinance revision process it had initiated long before the instant dispute arose. The City then enacted an interim ordinance in order to foreclose any misunderstanding, ambiguity, or abuse of the C-1 zone and to demonstrate compliance with RLUIPA. Such zoning revision was and is consistent with the City's long stated goal of having a turn-of-the-century walking commercial district.

37. Defendant admits the allegations in Paragraph 37.

38. Defendant admits the allegations in Paragraph 38.

39. Defendant admits that Troy maintains a comprehensive plan as a nonbinding land use guide.

40. Defendant denies the legal conclusion that the City Code and Comprehensive Plan constitute a "land use regulation" under RLUIPA.

## CUP Application

41. Defendant admits that Meyer submitted a CUP application on November 21, 2022.

42. Defendant admits that the application proposed multiple uses including religious meetings and the application expressly anticipates meetings of nearly double the amount alleged in the Complaint, to "the rated capacity" of the building. and that the application speaks for itself.

43. Defendant admits that the CUP application form required justification under listed criteria.

44. Defendant admits that Meyer submitted written justifications and that the application speaks for itself.

45. Defendant admits that Meyer made the statements quoted and that the application speaks for itself. The City further denies the accuracy of the allegations made within the application. The Department's Complaint is factually flawed in its reliance on an application that was found to be inaccurate.

46. Defendant admits that the City Council held a public hearing on January 25, 2023.

47. Defendant admits that Meyer spoke in support of his application.

48. Defendant admits that a City employee presented a report and that the report speaks for itself.

49. Defendant admits that 19 individuals appeared and spoke, with the breakdown of positions as stated.

50. Defendant admits that various community members made statements at the hearing. The public comments speak for themselves. Defendant denies any improper reliance on religious animus. By way of further answer, the City further affirmatively states that they instructed people to address their comments to the issues and to keep religious views out of it as they would not be considered by the Council.

51. Defendant admits that various community members made statements at the hearing. The public comments speak for themselves. Defendant denies any improper reliance on religious animus. By way of further answer, the City affirmatively states that at the hearing, the Mayor reminded the public that statements given must address the merits of the proposed development as measured by its compliance or lack of compliance with the comprehensive plan and the zoning code as that would be the sole basis relied upon by the Council in rendering its decision.

52. Defendant admits that various community members made statements at the hearing. The public comments are the expression of that citizen's opinion, nothing more. Defendant denies any improper reliance on other people's religious animus. By way of further answer, the City rejects and denies the Department's insinuation that this City is somehow unwelcoming or biased. The City of Troy is a wonderful welcoming community that is home

to many people with a wide variety of opinions, religious and political beliefs, and yet they are a harmonious community. The Council made its decision based solely on the merits of the proposed development as measured by its compliance or lack of compliance with the comprehensive plan and the zoning ordinance in effect at the time. The Department's insinuations are improper and irrelevant.

53. Defendant admits that various community members made statements at the hearing. The public comments speak for themselves. Defendant denies any improper reliance on religious animus. By way of further answer, the City states that the sole bases considered by the Council in making their decision are the merits of the proposed development as measured by its compliance or lack of compliance with the comprehensive plan and the zoning code

54. Defendant admits that various community members made statements at the hearing. The public comments speak for themselves. Defendant denies any improper reliance on religious animus. By way of further answer, the City rejects the Department's repeated insinuations that disagreement with putting any church in the turn-of-the-century business district is somehow improper. There are no churches in the two-block downtown commercial district.

55. Defendant admits that some audience members applauded some comments, but denies the Department's characterization of enthusiasm.

56. Defendant admits that 32 written comments were received, with 26 opposed and six in support.

57. Defendant admits that some written comments expressed negative views of Christ Church. Defendant denies that the City relied on said comments or religious animus in its decision-making. By way of further answer, the City denies that proof of Christ Church's reputation is relevant or admissible as to the Church's conduct in other communities, including Moscow, per FRE 405. The City of Troy relied solely on the merits of the proposed development as measured by its compliance or lack of compliance with the comprehensive plan and zoning ordinance in making its decision relative to the CUP application.

58. Defendant lacks sufficient knowledge to admit or deny these allegations regarding "longstanding tension" and therefore denies them. By way of further answer, the City of Troy states that none of the member of Council or the Mayor have had any such tension with any members of Christ Church and properly relied on lawful requirements in reaching their decision. The personal disputes between people within a community are neither the community's standards nor the community's policy and it is improper and irrelevant for the Department to insinuate otherwise.

59. Defendant lacks sufficient knowledge to admit or deny these allegations and therefore denies them. By way of further answer, the City of Troy is not the media. Some media publish the most controversial issues available in order to try to drive reader/viewership; there is a reason behind the old saying "if it bleeds it leads." Further, the Department fails to identify any "negative press coverage" to which it refers; such vague and ambiguous allegations are placed only for the improper purpose of attempting to "smear" the City of Troy, which is improper

60. Defendant lacks sufficient knowledge to admit or deny these allegations and therefore denies them. By way of further answer, the City again rejects the Department's attempt to smear a community of good people by claims of statements neither provided nor reliably sourced. Further, even if there were comments by people on "Facebook", they are utterly irrelevant to the decision by the City, which was properly based on the law.

61. Defendant admits that the Council followed the law and held a properly conducted public hearing and ensured that Mr. Meyer's rights were protected.

### Denial of the CUP Application

62. Defendant admits that on March 8, 2023, the City Council voted unanimously to deny the CUP.

63. Defendant admits that on March 29, 2023, the Council issued a written decision. The decision speaks for itself.

64. Defendant admits that the decision stated the CUP did not enhance the commercial district and was not in harmony with the Comprehensive Plan. In further response, the decision speaks for itself.

65. Defendant admits the decision is accurately quoted and that the decision speaks for itself.

66. Defendant denies the allegations that the decision was inconsistent or unsupported. The City further denies that a health club, dance classes and professional offices are not commercial. In further response, the decision speaks for itself.

67. Defendant denies the allegations that the decision was inconsistent or unsupported. In further response, the decision speaks for itself.

68. Defendant denies the allegations that the decision was inconsistent or unsupported. In further response, the decision speaks for itself. By way of further answer, the City denies the insinuation that the City had some duty to explain every possible distinction between uses.

69. Defendant denies the allegations that the decision was inconsistent or unsupported. In further response, the decision speaks for itself. By way of further answer, the City denies the Department's unsupported suggestion that the City must address every statement pro or con; the law requires a reasoned decision, which was provided.

70. Defendant admits that the decision referenced traffic, parking, and proximity to alcohol license restrictions. In further response, the decision speaks for itself and Defendant denies any improper reasoning.

71. Defendant admits that the decision referenced traffic, parking, and proximity to alcohol license restrictions. In further response, the decision speaks for itself and Defendant denies any improper reasoning.

72. Defendant admits that the decision referenced traffic, parking, and proximity to alcohol license restrictions. In further response, the decision speaks for itself and Defendant denies any improper reasoning.

73. Defendant admits that the decision referenced traffic, parking, and proximity to alcohol license restrictions. In further response, the decision speaks for itself and Defendant denies any improper reasoning.

74. Defendant admits that the decision referenced public opposition. Defendant denies that such opposition reflected religious discrimination or improper considerations.  By way of further answer, the City states that there was, in fact, substantial public opposition to the CUP that was based on the legal considerations the Council was to consider (and the only bases the Council did consider).

75. Defendant admits that the decision referenced public opposition. Defendant denies that such opposition reflected religious discrimination or improper considerations.

76. Defendant admits that the decision referenced public opposition. Defendant denies that such opposition reflected religious discrimination or improper considerations.

77. Defendant admits that the decision referenced public opposition. Defendant denies that such opposition reflected religious discrimination or improper considerations.

78. Defendant denies the allegations in Paragraph 78.  By way of further answer, the City affirmatively states that Christ Church, and any other church, are welcome in community; just not in the two-block turn-of-the-century business district.  The Department's insinuations and overt claims against the good people of Troy, Idaho are offensive and improper; further they are irrelevant and inaccurate. The Department has sought to bootstrap unknown "media" and "Facebook" claims in an attempt to malign a town of good people.

79. Defendant denies that the Council failed to consider conditions of approval.

80. Defendant admits that the Council approved the written decision unanimously.

81. Defendant admits that Meyer appealed.

82. Defendant admits that the City attorney addressed the Council and public regarding RLUIPA.

83. Defendant admits that the Council denied the appeal.

84. Defendant admits that it engaged in enforcement discussions, but made a decision to not engage in enforcement actions during Mr. Meyer's appeal period and while the City was attempting to work with Mr. Meyer to resolve the dispute. Later the Department began their investigation.

85. Defendant denies the allegations in Paragraph 85 for the reason they are untrue.

86. Defendant denies the allegations in Paragraph 86 for the reason they are untrue.

87. Defendant denies the allegations in Paragraph 87 for the reason they are untrue.

## CAUSES OF ACTION

## COUNT 1: VIOLATION OF RLUIPA'S EQUAL TERMS PROVISION

88. Defendant incorporates the above answers by reference.

89. Defendant denies the allegations in Paragraph 89 for the reason they are untrue.

90. Defendant denies the allegations in Paragraph 90 for the reason they are untrue.

## COUNT II: VIOLATION OF RLUIPA'S SUBSTANTIAL BURDEN PROVISION

91. Defendant incorporates the above answers by reference.

92. Defendant denies the allegations in Paragraph 92 for the reason they are untrue.

93. Defendant denies the allegations in Paragraph 93 for the reason they are untrue.

94. Defendant denies the allegations in Paragraph 94 for the reason they are untrue.

### COUNT III: VIOLATION OF RLUIPA'S NONDISCRIMINATION PROVISION

95. Defendant incorporates the above answers by reference.

96. Defendant denies the allegations in Paragraph 95 for the reason they are untrue.

### AFFIRMATIVE DEFENSES

In further answer to Plaintiff's Complaint, Defendants state for their affirmative defenses, as follows:

1. The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2. Defendant acted pursuant to its lawful zoning authority and comprehensive plan objectives, which are neutral, generally applicable, and consistent with constitutional and statutory requirements.

3. Defendant did not impose a substantial burden on Christ Church's religious exercise within the meaning of RLUIPA. Alternative venues and locations were available, and the CUP denial did not prevent Christ Church from practicing its religion.

4. Defendant treated Christ Church on terms equal to or more favorable than comparable nonreligious uses subject to conditional use review.

5. To the extent any burden on religious exercise occurred, it was in furtherance of compelling governmental interests, including land use planning, traffic management, and protection of the commercial district, and was the least restrictive means available.

6. Defendant's actions were not based on religion or denomination, but rather on neutral land use criteria and public planning considerations.

7. The CUP application failed to satisfy the City Code's neutral, generally applicable criteria, including compatibility with the Comprehensive Plan and impacts on parking, traffic, and the commercial district.

8. To the extent Plaintiff asserts claims inconsistent with Christ Church's or Mr. Meyer's prior representations or conduct, such claims are barred by estoppel and/or waiver.

9. Defendant reserves the right to assert additional defenses as discovery proceeds.

10. No jurisdiction exists due to lack of any interstate commerce or federal funding related to the claims raised in Department's Complaint.

11. The relief requested by the Department violates the United States Constitution's Establishment Clause by providing a special preference beyond what RLUIPA requires.

## DEMAND FOR JURY TRIAL

Defendants demand a trial by jury on all issues so triable.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court:

1. Dismiss Plaintiff's Complaint with prejudice;

2. Enter judgment in favor of Defendant;

3. Award Defendant its costs and attorneys' fees as permitted by law; and

4. Grant such other relief as the Court deems just and proper.

Dated this 20th day of August, 2025.

>Respectfully submitted
>
>By: /s/ Joseph P. McGill
>FOLEY, BARON, METZGER & JUIP, PLLC
>38777 Six Mile Road, Suite 300
>Livonia, MI  48152
>(734) 742-1800 / Fax (734) 521-2379
>jmcgill@fbmjlaw.com
>
>By: /s/ Todd S. Richardson
>Todd S. Richardson
>The Law Offices of Todd S. Richardson
>604 Sixth Street
>Clarkston, WA 99403
>Todd@MyAttorneyTodd.com
>
>*Counsel For Defendants*

## **PROOF OF SERVICE**

I hereby certify that on August 20, 2025, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein.

/s/ Nicole Scheuermann